OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 UCC 4-406 (4) bars suit to recover amounts paid by a bank on a forged instrument unless the customer gives written notice of the forgery within one year of the time the account statement was made available. On this appeal, defendant claims it should be treated as a "bank” for purposes of applying UCC 4-406 (4) because it performed the function of a bank in administering plaintiff’s money market checking ac
 
 *283
 
 count. We conclude that defendant was entitled to invoke UCC 4-406 and that, because plaintiff failed to give timely notice, the complaint was properly dismissed.
 

 Arthur Woods died in December 1989 holding an annuity issued by MONY Legacy Life Insurance Company, payable on his death to his wife, Dorothy Woods. The attorney for the estate, Cornelius F. Collins, contacted MONY and requested that the proceeds of the annuity be paid to plaintiff Dorothy Woods in a lump sum. Accordingly, on March 8, 1990, MONY transferred the $24,900 proceeds of the annuity to a "MONY Market” checking account in Woods’ name, forwarded the checkbook to Collins, and sent a statement to Woods confirming the amount of the benefit and the opening of the account. On March 26, MONY received a change of address request, purportedly signed March 21 by plaintiff Woods, directing that all future correspondence regarding her account be sent to Collins. MONY made the change and sent a confirmation to Woods at her home address.
 

 Between March 21 and July 17, 1990, six unauthorized checks bearing Woods’ forged signature — in the total amount of $24,448.91 — were drawn on the MONY Market account. The monthly statements reflecting these forged drafts were mailed to Collins on March 31, April 30, May 31, June 30 and July 31, 1990. Woods claims she first discovered the existence of the MONY Market account in May or June 1991. She thereupon requested and on June 21, 1991 received copies of the account statements and paid drafts.
 

 On November 7, 1991, Woods notified MONY that the signatures on the six drafts were forgeries and requested reimbursement. After MONY declined, Woods commenced this action to recover the amounts improperly debited from her account. On MONY’s motion to dismiss, Supreme Court dismissed the complaint and the Appellate Division affirmed, holding that suit was barred under UCC 4-406 (4) on the ground that plaintiff failed to give notice of the forgeries within one year of receipt of the account statements. We granted leave and now affirm.
 

 The UCC imposes strict liability on a bank that charges against a customer’s account any item not properly payable, such as a check bearing a forgery of the customer’s signature
 
 (see,
 
 UCC 4-401 [1];
 
 Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.,
 
 74 NY2d 340, 345;
 
 see also,
 
 1 White and Summers, Uniform Commercial Code § 15-3 [Practitioner’s 3d
 
 *284
 
 ed]; McDonnell,
 
 Bank Liability for Fraudulent Checks: The Clash of the Utilitarian and Paternalist Creeds under the Uniform Commercial Code,
 
 73 Geo U 1399, 1404). However, banks may assert a defense under UCC 4-406 (4), which provides that "[w]ithout regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature * * * is precluded from asserting against the bank such unauthorized signature” (UCC 4-406 [4]).
 

 This provision is derived from the depositor’s common-law duty to examine drafts and statements furnished by the bank and report alterations or forgeries within a reasonable time
 
 (see, National Sur. Co. v President & Directors of Manhattan Co.,
 
 252 NY 247, 256,
 
 rearg denied
 
 252 NY 616;
 
 Critten v Chemical Natl. Bank,
 
 171 NY 219, 227-228;
 
 see also,
 
 UCC 4-406, Comment 7). The same policy underlies UCC 4-406 (4): with the depositor in the better position to discover an alteration of the check or forgery of his or her own signature, the absolute time limit places the burden on the depositor to examine the statement and items with reasonable promptness. "[TJhere is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature” (UCC 4-406, Comment 5).
 

 MONY concedes that it is not a bank, but argues that it is entitled to application of the statutory time limit because, in administering money market checking accounts, it performs essentially the same function as a bank. The UCC defines a "bank” as "any person engaged in the business of banking” (UCC 1-201 [4]), a definition we are obligated to construe liberally to promote the underlying purposes and policies of the UCC (UCC 1-102 [1]). We conclude that, though not a bank, in its operation of the MONY Market account defendant was "engaged in the business of banking” for purposes of UCC 4-406 (4).
 

 In basic respects, plaintiffs MONY Market account resembled an ordinary checking account. MONY, for example, provided and retained her signature card, issued a checkbook and sent its customer monthly statements. Thus, the same policy concern that motivated UCC 4-406 — prompt detection of alterations and forgeries by the person better able to detect them — existed with respect to Woods’ account.
 
 *285
 
 Moreover, the goal of the UCC — "to simplify, clarify and modernize the law governing commercial transactions” (UCC 1-102 [2] [a]) — is best served by application of a uniform standard for detecting forgeries on returned drafts. Other jurisdictions to consider the question have concluded, as do we, that there is no reason to treat the account at issue differently from a checking account administered by a bank (see,
 
 Lichtenstein v Kidder, Peabody & Co., 121 ¥
 
 Supp 975 [WD Pa 1989],
 
 vacated on other grounds 111
 
 F Supp 423 [WD Pa 1991] [brokerage firm administering checking accounts];
 
 Asian Inti, v Merrill Lynch, Pierce, Fenner & Smith,
 
 435 So 2d 1058, 1062 [La App 1983] [same];
 
 see also,
 
 UCC 1-102 [2] [c] [uniformity among jurisdictions is a purpose of UCC]; McKinney’s Cons Laws of NY, Book 1, Statutes § 262 [a] [in construing uniform statutes, "(f)oreign decisions may be entitled to considerable weight” to promote "uniform interpretation throughout the nation”]). As the court noted in
 
 Lichtenstein,
 
 "It would be anomalous to establish one rule for checking accounts administered by a bank, and another rule for checking accounts administered by a brokerage firm in connection with a bank” (727 F Supp, at 979).
 

 Plaintiff argues that, because the checks were "payable through” State Street Bank and Trust Company, that entity, a bank, bore the ultimate responsibility of compliance with UCC 4-406. However, MONY, not State Street, opened Woods’ account, retained the signature card, issued the checkbook, provided monthly statements and corresponded with the customer
 
 (see also,
 
 UCC 3-120 [instrument stating "payable through” bank does not itself authorize bank to pay the instrument]). We conclude that, insofar as it administered Woods’ MONY Market checking account, MONY is entitled to the benefit of UCC 4-406.
 

 The remaining question is whether plaintiff timely notified MONY of the forgery.
 

 The one-year period begins to run "[w]hen a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer” (UCC 4-406 [1]). Defendant argues that the account statements were made available to Woods in a reasonable manner when mailed to Collins and that the one-year period commenced no later than July 31, 1990. We agree.
 

 
 *286
 
 Plaintiff failed to raise a triable issue of fact that it was unreasonable for defendant to send account statements to her attorney, Collins, instead of to her directly. As plaintiff does not dispute that Collins had previously contacted MONY on behalf of the estate, or that she failed to object after receiving confirmation of the change of address, MONY could reasonably have concluded that Woods intended that Collins receive the account statements on her behalf. Nor does Woods allege that the change of address request was a forgery. Rather, in her affidavit, she states: "I do not recall executing a change of address form * * * nor do I recall receiving the confirmation of the change of address notification sent to my home address.” On this record, plaintiff’s assertions fail to raise a genuine issue of material fact.
 

 Thus, we conclude that the account statements were "made available” to Woods, and the one-year period commenced, when Collins received the monthly statements in 1990
 
 (see, 1
 
 White and Summers, Uniform Commercial Code § 16-3, at 790 [Practitioner’s 3d ed];
 
 see also, McMickle v Girard Bank,
 
 356 Pa Super 521, 523, 515 A2d 16 [1986] [bank statements sent to customer’s attorney at her request were "made available” to customer under UCC 4-406 (1)];
 
 Mesnick v Hempstead Bank,
 
 106 Misc 2d 624, 626 [bank statements sent to customer’s estranged husband were "made available” to customer under UCC 4-406 (1)]). As Woods failed to give notice of forgery until November 7, 1991, more than 15 months later, this action is barred under UCC 4-406 (4) and the complaint was properly dismissed. We do not pass upon defendant’s alternative grounds for dismissal.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.