*Mirlis v. Greer*

# In the
# United States Court of Appeals
## For the Second Circuit

**August Term, 2022**

(Argued: February 21, 2023    Decided: August 30, 2023)

Docket No. 21-202

ELIYAHU MIRLIS,

*Plaintiff-Appellee,*

–v.–

SARAH GREER,

*Defendant-Appellant.*

Before:    WALKER, LYNCH, and ROBINSON, *Circuit Judges.*

Defendant-Appellant Sarah Greer appeals the district court's judgment awarding damages to Plaintiff-Appellee Eliyahu Mirlis to recover funds Greer received as the result of various alleged fraudulent transfers. The district court entered a default against Greer as a sanction under Federal Rule of Civil Procedure 37(b) for her repeated failure to comply with discovery orders, and ultimately entered a default judgment against Greer for fraudulent transfers,

awarding Mirlis damages calculated based on three checks Greer drew from bank accounts she held jointly with her debtor husband.

We conclude that the district court did not abuse its discretion in determining that Greer's noncompliance during discovery warranted a default. We also conclude that, on this record, Greer's withdrawals from accounts she held jointly with her husband constitute fraudulent transfers under Connecticut law. We accordingly AFFIRM.

AFFIRMED.

---

MATTHEW K. BEATMAN, James M. Moriarty, John L. Cesaroni (*on the brief*), Zeisler & Zeisler, P.C., Bridgeport, CT, *for Plaintiff-Appellee*

RICHARD P. COLBERT, Matthew J. Letten (*on the brief*), Day Pitney LLP, New Haven, CT; Jonathan J. Einhorn (*on the brief*), Law Office of Jonathan J. Einhorn, New Haven, CT, *for Defendant-Appellant*.

---

ROBINSON, *Circuit Judge*:

Defendant-Appellant Sarah Greer appeals the district court's judgment awarding damages to Plaintiff-Appellee Eliyahu Mirlis to recover funds Greer received as the result of an alleged fraudulent transfer—namely, money she withdrew from bank accounts she held jointly with her debtor husband and placed into her personal, individually held bank accounts.

The district court entered a default against Greer as a sanction under Federal Rule of Civil Procedure 37(b) for her repeated failure to comply with discovery orders, and ultimately entered a default judgment against Greer for fraudulent transfers, awarding Mirlis damages calculated based on three checks Greer drew from bank accounts she held jointly with her debtor husband.

For the reasons set forth below, we conclude that the district court did not abuse its discretion in determining that Greer's noncompliance during discovery warranted a default. We also conclude that, on this record, Greer's withdrawals constitute fraudulent transfers under the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), Conn. Gen. Stat. §§ 52-552e, 52-552f, and Connecticut common law. We accordingly AFFIRM.

## BACKGROUND

Mirlis is a creditor of Greer's husband, having secured a judgment against him of over $21 million in June 2017.[1] *See Mirlis v. Daniel Greer*, No. 3:16-cv-678 (MPS), Judgment, Dkt. No. 163 (D. Conn. June 6, 2017). Greer's husband was on notice of the claims that gave rise to Mirlis' underlying lawsuit since at least 2002,

---

[1] Unless otherwise specified, the facts set forth here are drawn from the district court's Ruling on Motion for Default Judgment, *Mirlis v. Greer*, No. 3:18cv2082(MPS), 2021 WL 405886 (D. Conn. Jan. 4, 2021), *reconsideration denied*, 2021 WL 1711649 (D. Conn. Apr. 30, 2021), and the facts alleged in Mirlis's complaint. Because the district court's judgment was based on an order of default against Greer, the district court appropriately accepted the facts alleged in Mirlis's complaint as true.

3

when the conduct giving rise to Mirlis's claims against him began, and Greer herself was on notice since at least May 2016, when the underlying lawsuit was filed.

As relevant to this appeal, in order to collect on the judgment against her husband, Mirlis brought claims against Greer arising from three allegedly fraudulent transfers to her. Greer and her husband held joint checking accounts at Liberty Bank and Start Community Bank. The Liberty Bank account was opened in January 2010, after Greer's husband was on notice of the claims that gave rise to the suit against him, *see* J. App'x 439 (reflecting a "Consumer Signature Card" for the Liberty account dated January 13, 2010), and the Start account was opened in February 2017, after Mirlis sued Greer's husband, *see also* J. App'x 405-07 (reflecting a "New Account Review Form" for the Start account dated February 17, 2017). Greer's husband contributed all of the funds in the Liberty account, and almost all of the funds in the Start account.[2]

---

[2] Greer testified that she did not know whether she had deposited any funds into the Start account, and that, "[b]esides Social Security," she would have had no funds available in 2017 to have deposited in that account. J. App'x 425. In addition, Mirlis alleged that Greer deposited the money she earned into a separate account owned solely by her. A review of the May and June 2017 Start bank statements (the only statements for this account in the record) confirms that the

4

In May 2017, about a week before the jury returned its verdict in the underlying action between Mirlis and Greer's husband, Greer drafted a $5,000 check from the Start account payable to herself. This check was then deposited into an account Greer held solely in her own name. The next month, in June 2017, after the jury verdict but a day before judgment was entered against Greer's husband, Greer drafted a $220,000 check from the Liberty account payable to herself. Greer deposited this check into an account at another bank that she recently opened solely in her name. Greer testified at her deposition that she transferred the funds from the Liberty account "[b]ecause [she] did not want it taken." J. App'x 427. After judgment was entered in Mirlis's action against Greer's husband, Greer wrote a $13,000 check drawn from the Start account; that check

Start account balance as of April 29, 2017 was $10,932.26, and that a total of approximately $30,641.80 was deposited into the account between April 29 and Greer's second withdrawal of $13,000 on June 16, 2017. J. App'x 430-31, 434-35. The only record evidence of a deposit of social security benefits for Greer reflects a $1,997.70 payment from the Social Security Administration on May 24. J. App'x 431. (There was also a deposit of the same amount on June 28, 2017, but that was after Greer made the withdrawals at issue in this case. J. App'x 435.) This is substantially less than the $18,000 she withdrew that Mirlis contends constituted fraudulent transfers, and only a small portion of the monies in the account as of April 29 or deposited thereafter by Greer's husband. In addition, Greer's contributions to the Start account were further offset by payments she made from the account to third parties. *See, e.g.*, J. App'x 420, 422 (Greer acknowledging that she made payments to third parties from the Start account in May and June 2017); J. App'x 432, 436 (copies of checks with Greer's signature). Because Greer has not argued on appeal or in the proceedings below that she personally contributed funds to the Start account, we need not determine with more specificity her precise contributions to the account.

5

was likewise deposited into an account held solely in her name. Greer did not provide consideration for any of these checks.

In December 2018, Mirlis sued Greer under Connecticut statutory and common law to recover the funds Greer withdrew from the joint accounts.[3] Mirlis alleged that Greer's husband transferred the funds to Greer "to avoid paying" the debt owed to Mirlis, J. App'x 18 ¶ 1, and that the transfers "were made with the actual intent to hinder, delay or defraud" Greer's husband's creditors, J. App'x 25 ¶ 49.

Mirlis first served Greer with interrogatories and requests for production regarding her finances in May 2019. Greer did not respond. In August 2019, the district court ordered Greer to comply with the discovery requests within 14 days. Greer did not timely respond. In October 2019, the court granted Mirlis's motion for sanctions and again ordered Greer to "respond in full to the outstanding discovery requests." J. App'x 269. The court also ordered Greer to pay Mirlis's attorney's fees relating to the motion for sanctions and to file an affidavit setting

---

[3] Mirlis also sued to recover funds transferred from the Yeshiva of New Haven to Greer's retirement accounts. Greer's appeal with respect to those transfers and the related denial of her motion for reconsideration is now moot because, after Greer filed her opening brief in the instant appeal, this Court—at Mirlis's request—remanded the case, and the district court amended its judgment to exclude damages associated with these retirement transfers. For that reason, we need not address the arguments in Greer's opening brief challenging the district court's award of damages as to the retirement account transfers.

forth with specificity the steps she had taken to comply with the discovery requests. It warned that "[f]ailure to comply with this order may result in a default judgment . . . ." J. App'x 269-70 (emphasis omitted). Greer filed an affidavit, but her response to the court's order was incomplete because she failed to produce the requested financial documents, gave unresponsive answers to the interrogatories, and failed to pay the sanctions award.

In November 2019, Mirlis filed a second motion for sanctions, this time seeking entry of default judgment in addition to an award of attorney's fees. Greer did not oppose the motion. In January 2020, the court ordered Greer to show cause within 14 days as to why it should not enter a default against her for noncompliance, explicitly warning Greer that her failure to respond would result in the entry of default. Greer did not timely respond. Thereafter, the district court stayed further proceedings pending this Court's resolution of the appeal in the underlying case that led to the judgment against Greer's husband. After this Court affirmed that judgment in April 2020, *Mirlis v. Daniel Greer*, 952 F.3d 36 (2d Cir. 2020), the district court again ordered Greer to show cause within 14 days as to why it should not enter a default against her. Greer did not respond. On June 2, 2020, the district court entered a default against Greer pursuant to Fed. R. Civ. P. 37(b). The court then invited Mirlis "to file a motion for default judgment as to

7

damages, together with evidence[,] . . . that will allow the Court to calculate damages with reasonable certainty."  Sp. App'x 7.  Mirlis and Greer each responded to the court's order, and Greer requested an evidentiary hearing with respect to damages.[4]

In January 2021, after reviewing Mirlis's and Greer's submissions and determining that an evidentiary hearing was unnecessary, the district court entered a default judgment against Greer for $238,000.00 plus $51,215.02 in prejudgment interest on the claims at issue in this appeal.[5]  In entering default judgment, the court concluded that Greer's three withdrawals from the joint accounts held with her husband constituted intentional fraudulent transfers in violation of CUFTA, Conn. Gen. Stat. § 52-552e(a)(1), constructive fraudulent transfers in violation of § 52-552f(a) and § 52-552e(a)(2), and common law fraudulent transfers.

On appeal, Greer argues that the district court abused its discretion by imposing the sanction of default, and she contends that, as a matter of law, the three check transfers for which the district court awarded damages were not

---

[4] Notably, Greer's request for an evidentiary hearing focused on the uncertainties in calculating damages for the retirement account transfers.  *See* Greer's Motion for Evidentiary Hearing, Dist. Ct. Dkt. No. 112-1, at 4–5.  With respect to the check transfers, Greer "conceded that [the] two amounts [in the Start Account] might be suitable to calculation with reasonable certainty, upon presentation of the required and appropriate affidavits."  *Id.* at 5.

[5] For the reasons explained in note 3 above, the district court's total judgment was higher.

fraudulent transfers under CUFTA, Conn. Gen. Stat. §§ 52-552a-5521, or Connecticut common law.

## DISCUSSION

### I.  Default Sanction

We review a district court's imposition of sanctions under Rule 37 for abuse of discretion, and the factual findings in support of the district court's decision for clear error. *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010).

Rule 37(b) provides that when a party fails to comply with a discovery order, a court may impose sanctions, including "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). A district court judge should only enter the harsh penalty of default judgment in "extreme circumstances," where "a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (internal quotation marks omitted); *see also Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 249 (2d Cir. 1996). In those extreme circumstances, however, "[d]efault procedures . . . provide a useful remedy when a litigant is confronted by an obstructionist adversary. Under such circumstances those procedural rules play a constructive role in maintaining

the orderly and efficient administration of justice." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

In considering whether case-dispositive sanctions are within a district court's discretion under Rule 37, we have relied on the following non-exclusive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (internal quotation marks omitted).

Greer argues that the district court abused its discretion by imposing a sanction—default judgment—that was "grossly disproportionate" to her actual conduct. Appellant's Br. 17. She contends that the district court gave insufficient weight to the fact that Mirlis already had many of the records he requested in discovery, that she did not have possession of the requested financial records and was not sufficiently familiar with her and her husband's finances to have gotten them, and that she had been preoccupied with her husband's then-pending criminal trial.

We conclude that the district court did not abuse its discretion. As set forth above, Greer repeatedly failed to respond to interrogatories and produce the

10

documents Mirlis requested, in violation of the district court's many orders. This record supports the district court's determination that Greer acted willfully, that lesser sanctions would have been inadequate given Greer's continued noncompliance after multiple explicit warnings about the consequences of further noncompliance, that Greer was given ample notice that her continued noncompliance would result in sanctions, including the entry of default judgment, and that her noncompliance spanned more than six months.

With respect to Greer's argument that her involvement in her husband's then-pending criminal trial interfered with her ability to respond to the discovery requests and court orders, the district court did not abuse its discretion in relying on the fact that Greer was originally obligated to respond to Mirlis's discovery requests well before her husband's trial and that she failed to respond to the court's numerous show cause orders long after trial had ended. In addition, Greer offers no support for her suggestion that, merely because she thought Mirlis already had some of the requested financial documents, she could ignore the discovery requests and the district court's orders compelling her to make an adequate response. And we have found none. *Cf. Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 390 (2d Cir. 1981) ("Rule 37(d) makes it explicit that a party properly served has an *absolute duty to respond*, that is, to . . . serve a

11

response to requests for discovery under Rule 34[,] . . . and that the court in which the action is pending may enforce this duty by imposing sanctions for its violation." (emphasis added)).

Moreover, Greer's lack of *physical* possession of certain bank records does not excuse her noncompliance with the court's order. Mirlis was entitled to request records in Greer's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Control" does not require "actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents . . . ." *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019), *on reconsideration in part*, 439 F. Supp. 3d 169 (S.D.N.Y. 2020) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997)). For that reason, "if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). Greer failed to establish that she had neither access to, nor the practical ability to obtain, the financial documents Mirlis sought.

Finally, Greer failed to demonstrate that lesser sanctions short of entry of default would have been enough to compel her compliance with the discovery

requests. In light of the attorney's fee award that she had already ignored, the district court did not abuse its discretion in concluding that Greer was unlikely to respond to additional monetary penalties.

For these reasons, we conclude that the district court did not abuse its discretion in imposing a sanction of default in response to Greer's sustained failure to comply with discovery requests and orders from the court.

## II. Fraudulent Transfers

Greer argues that, even if the district court did not abuse its discretion in imposing default as a Rule 37(b) sanction, the default judgment should nevertheless be vacated because Mirlis's allegations do not establish as a matter of law that Greer's withdrawals from the joint accounts were fraudulent transfers by a debtor under CUFTA or Connecticut common law.

On a motion for default judgment after default has entered, "a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor, but it is also required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (internal citations omitted). We review the district court's application of law on a motion for default judgment without deference to the district court. *Id.*

13

CUFTA establishes various circumstances in which a "transfer . . . by a debtor" is fraudulent as to a creditor whose claim arose before the transfer was made. Conn. Gen. Stat. § 52-552e(a); *see id.* § 52-552e(a)(1) (intentional fraudulent transfer made where debtor "inten[ded] to hinder, delay or defraud a creditor of the debtor"); *id.* § 52-552f(a) (constructive fraudulent transfer made where debtor did not receive "a reasonably equivalent value in exchange . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer"); *id.* § 52-552e(a)(2) (constructive fraudulent transfer made where debtor did not receive "a reasonably equivalent value in exchange . . . and the debtor (A) was engaged or was about to engage in a business or transaction" in relation to which the debtor's remaining assets were "unreasonably small," or "(B) intended to incur, or believed or reasonably should have believed that [the debtor] would incur, debts beyond [the debtor's] ability to pay as they came due"). Under Connecticut common law, which is largely coextensive with CUFTA as to fraudulent transfers, a party alleging a fraudulent transfer must show "either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet [the transferor's] obligations or (2) that the conveyance was made with a fraudulent intent in which the grantee participated." *Certain*

14

*Underwriters at Lloyd's, London v. Cooperman*, 289 Conn. 383, 394 (2008) (quoting

*Bizzoco v. Chinitz*, 193 Conn. 304, 312 (1984)).

Under any legal theory, the existence of a "transfer . . . by a debtor" is an

essential element of a fraudulent transfer claim. Conn. Gen. Stat. §§ 52-552e(a), 52-

552f(a). "Debtor" is defined as "a person who is liable on a claim." *Id.* § 52-552b(6).

The central question in this appeal is whether Greer's independent withdrawals

of funds from the joint accounts qualify as "transfer[s] . . . by a debtor."[6] *Id.* §§ 52-

552e(a), 52-552f(a).

Greer says no. She argues that the funds she withdrew from her joint

accounts with her husband were not *transfers* of her *debtor husband's* property.

Greer points to Connecticut case law recognizing a rebuttable presumption that a

spouse's deposit into a bank account held jointly with the other spouse is a gift.

*See Trenchard v. Trenchard*, 141 Conn. 627, 630 (Conn. 1954) ("[A] transfer from a

wife to a husband is presumed to be a gift."); *Wright v. Mallett*, 94 Conn. App. 789,

792 (Conn. App. Ct. 2006) (noting that "[a] rebuttable presumption of donative

intent exists when the grantee is the natural object of the grantor's bounty" and

---

[6] Mirlis has not alleged that Greer made the withdrawals at her debtor husband's direction. *Cf. Geriatrics, Inc. v. McGee*, 332 Conn. 1, 11-24 (2019) (applying agency principles and holding that "CUFTA's requirement that the fraudulent transfer be 'made by the debtor' encompasses a transfer made by a debtor's attorney-in-fact").

that Connecticut courts "traditionally have recognized such a presumption between husband and wife" (internal citation omitted)). In Greer's view, her debtor husband's deposit of his funds *into* the joint accounts may have constituted a "transfer," but once the money was in the joint accounts, that money had been gifted to her and her withdrawals cannot be viewed as fraudulent transfers *by her debtor husband*.

We disagree. We predict that the Connecticut Supreme Court would conclude that, even assuming Greer's husband's deposits into their joint accounts were gifts from him to her, under the broad terms of CUFTA her withdrawals nevertheless constitute "transfer[s] . . . by a debtor." Conn. Gen. Stat. §§ 52-552e(a), 52-552f(a); *see also Tom Rice Buick-Pontiac v. Gen. Motors Corp.*, 551 F.3d 149, 154 (2d Cir. 2008) (explaining that, in the absence of authoritative law from a state's highest court, a federal court must predict how the state court would resolve the state law question unless state law is so uncertain that the federal court can make no reasonable prediction).

Our conclusion relies primarily on two features of Connecticut law. First, CUFTA's broad definition of "transfer," *see* Conn. Gen. Stat. § 52-552b(12), and second, CUFTA's provision that a transfer occurs, or is "perfected," when the debtor's funds are no longer potentially subject to a lien in favor of the debtor's

16

judgment creditors, *see id.* § 52-552g(1)(B), which, in this case, would have occurred at the moment the funds were withdrawn from the Greers' joint accounts, s*ee Fleet Bank Connecticut, N.A. v. Carillo*, 240 Conn. 343 (1997).

Significantly, CUFTA broadly defines "transfer" as "*every* mode, *direct or indirect*, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." Conn. Gen. Stat. § 52-552b(12) (emphasis added). The Connecticut Supreme Court's decision in *Canty v. Otto* is instructive as to the wide scope of this definition as applied to property jointly owned by spouses. 304 Conn. 546 (2012). In that case, the court considered a CUFTA claim by a creditor against the ex-wife of a debtor to recover funds awarded to the ex-wife pursuant to an allegedly collusive divorce decree entered after the claim against the debtor husband arose. *Id.* at 549-52. In concluding that the dissolution decree distributing property to the debtor's wife could qualify as a "transfer" under CUFTA, the Supreme Court emphasized the broad definition of "transfer" under the statute. *See id.* at 558. In particular, it explained, "the use of the phrases 'every mode' and 'voluntary or involuntary' supports the conclusion that the term transfer is defined very broadly under the act." *Id*. The court also noted that strong policy considerations supported that view: "in view of the

17

overall policy of protecting creditors, it is unlikely that the legislature intended to grant married couples a one-time-only opportunity to defraud creditors by including the fraudulent transfer in a marital separation agreement." *Id.* at 562 (internal quotation marks and alterations omitted) (quoting *Mejia v. Reed*, 31 Cal. 4th 657, 668 (Cal. 2003)).

Moreover, CUFTA provides that a transfer is not completed until it "is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under [CUFTA] that is superior to the interest of the transferee." Conn. Gen. Stat. § 52-552g(1)(B). Thus, to the extent that the funds deposited by Greer's husband remained potentially subject to a lien by Greer's husband's judgment creditors, his deposit of the funds did not *complete* any donative "transfer" to Greer for purposes of CUFTA.

Finally, under Connecticut law, the funds were subject to a lien in favor of Greer's husband's judgment creditors *until the time she withdrew them*. *See Fleet Bank*, 240 Conn. at 350-52. In *Fleet Bank*, the Connecticut Supreme Court considered whether a judgment creditor could enforce a statutory right to a bank execution "against the entire balance of a joint bank account to which both a judgment debtor and his nondebtor spouse ha[d] contributed funds." *Id.* at 345. The court held that each coholder of a joint account "has a sufficient property

interest to permit a judgment creditor to exercise a bank execution" pursuant to Connecticut's bank execution statute. *Id*. at 352 (emphasis omitted) (citing Conn. Gen. Stat. § 52-367b). The court explained that "a coholder's property interest in the joint account exposes that account, *in its entirety*, to the creditor's collection powers, in the absence of statutory or common law protections." *Id.* (emphasis added). Thus, even if Greer's husband's deposits constituted gifts to her, as she argues, her withdrawals of those funds perfected the transfers *by him* and thus constituted "transfer[s] . . . by a debtor" for purposes of CUFTA. Conn. Gen. Stat. §§ 52-552e(a), 52-552f(a).

Given these principles of Connecticut law, the record supports the district court's conclusion that the three withdrawals in question constituted fraudulent transfers under CUFTA and Connecticut common law. *Mirlis*, 2021 WL 405886 at *3-5. Indeed, although Greer's husband did not himself withdraw funds from the joint accounts and deposit them into Greer's personal accounts, he set the transfers in motion by depositing his funds into the joint accounts. We can reasonably predict that, if the Connecticut Supreme Court were to reach this question, it would hold that the text of CUFTA and the strong policy considerations underlying it would support a broad reading of "transfer . . . by a debtor" that would encompass the situation presented here—namely, a debtor's funding of a

19

joint account from which a spouse can withdraw funds without accountability to the debtor's creditors.

As set forth above, the Liberty and Start accounts—which were funded primarily or entirely by Greer's debtor husband—were created after Greer's husband had notice of the claims against him. In addition, Mirlis alleged that Greer's husband transferred the funds to Greer "to avoid paying" his debt to Mirlis and that the transfers "were made with the actual intent to hinder, delay or defraud" Greer's husband's creditors. J. App'x 25 ¶ 49. These allegations are supported by a host of factors identified in CUFTA as supporting an inference of fraudulent intent, including the facts that, as the debtor's spouse, Greer was an "insider," Conn. Gen. Stat. § 52-552b(7)(A)(i); her husband had been sued before the transfers were perfected; and Greer did not provide consideration for the money withdrawn. Conn. Gen. Stat. § 52-552e(b) (listing non-exclusive factors a court may consider in determining whether a transfer was made with fraudulent intent). Moreover, Greer testified that she transferred the funds from the Liberty account "[b]ecause [she] did not want it taken." J. App'x 427. These facts are sufficient to establish Greer's liability under CUFTA and Connecticut common law for effectuating fraudulent transfers initiated by her debtor husband.

In sum, the district court did not err in concluding that Greer is liable for the alleged fraudulent transfers as a matter of Connecticut law, and the district court properly entered default judgment against her.

*** 

For the reasons set forth above, we AFFIRM the district court's judgment.