41 A.3d 280 (2012)
304 Conn. 546
Regina CANTY, Administratrix (Estate of Shamaia Smith)
v.
Kathleen J. OTTO.
No. 18610.
Supreme Court of Connecticut.
Argued January 13, 2012.
Decided May 1, 2012.
*283 Proloy K. Das, with whom was Glenn E. Coe, Hartford, for the appellant (defendant).
Stephen F. McEleney, Hartford, for the appellee (plaintiff).
Campbell D. Barrett, Arnold H. Rutkin, Westport, and Jon T. Kukucka, Hartford, filed a brief for the American Academy of Matrimonial Lawyers, Connecticut Chapter, as amicus curiae.
ROGERS, C.J., and NORCOTT, PALMER, McLACHLAN, EVELEIGH and HARPER, Js.
EVELEIGH, J.
The defendant, Kathleen J. Otto, appeals[1] from the judgment of the trial court granting the application of the plaintiff, Regina Canty, administratrix of the estate of Shamaia Smith, for a prejudgment remedy. On appeal, the defendant contends that the plaintiff, who is a creditor of her *284 debtor spouse, Kenneth Otto, Sr. (Otto), cannot collect the debt from the defendant, a nondebtor spouse, by bringing a claim under the Uniform Fraudulent Transfer Act (act), General Statutes § 52-552a et seq. Specifically, the defendant claims that: (1) the plaintiff lacks standing to bring a claim under the act because the distribution of marital assets in a dissolution decree is not a transfer under the act; (2) the trial court's determination that the plaintiff had standing under the act because the dissolution was undertaken with actual intent to hinder, delay or defraud the estate of Smith was clearly erroneous; and (3) the trial court lacked subject matter jurisdiction over the plaintiff's claim under the act because it could not disturb the property distribution in the dissolution decree. The plaintiff responds that she does have standing to bring a claim under the act, that the trial court's determination that the dissolution action was undertaken with actual intent to hinder, delay or defraud Smith's estate was proper, and that the trial court did have jurisdiction over her claim because it could grant practical relief under the act.[2] We agree with the plaintiff and, accordingly, affirm the judgment of the trial court.
The following facts, found by the trial court,[3] and procedural history, are relevant to our resolution of the issues on appeal. In early 2007, the East Hartford police department and state police began to investigate Otto in connection with the disappearance of Smith. The defendant, who was the wife of Otto, first learned of the police investigation "several weeks prior to April 7, 2007." At that time, the defendant learned from the police that Smith was an exotic dancer and a prostitute with whom Otto had been sexually involved. On April 13, 2007, the defendant transferred $8000 from a bank account held jointly with Otto to an account in her name alone, because she feared that the money might be "attached by someone." Subsequently, on April 16, 2007, pursuant to a search warrant, the police commenced searching a property located in Stafford (Stafford property), which was co-owned by Otto and his son, for evidence in connection with Smith's disappearance. Otto was present when the search commenced. Within one or two days of that search, Smith's remains were found buried on the Stafford property. Thereafter, on April 17, 2007, Otto and the defendant traveled together to the department of motor vehicles to transfer title in a jointly owned vehicle to the defendant. The couple then continued to Tewksbury, Massachusetts, where Otto transferred his title to certain residential property to the defendant. No consideration was paid by the defendant to Otto for these transfers. On either April 20 or April 23, the defendant telephoned a local attorney concerning the filing of a dissolution action. Thereafter, she contacted attorney Bruce S. Beck for an appointment on that day. Otto drove the defendant to Beck's office. A dissolution proceeding was then initiated on that day by service upon Otto as he waited in the *285 reception area of Beck's office. Pursuant to the dissolution action, the next day a notice of lis pendens was filed against Otto's interest in property he owned in Ellington, as well as the Stafford property. The dissolution action was formally filed on April 27, 2007 (dissolution action). On May 9, 2007, the estate of Smith commenced a civil action against Otto, alleging that he had caused Smith's death (wrongful death action). On May 14, 2007, the state arrested Otto and charged him with one count of murder in violation of General Statutes § 53a-54a, and two counts of tampering with physical evidence in violation of General Statutes § 53a-155 (criminal case). The defendant continued living with Otto until he was incarcerated.
Thereafter, on June 4, 2007, after a full hearing in the wrongful death action, the plaintiff obtained a prejudgment remedy order against Otto in the amount of $4.5 million. The plaintiff then moved to intervene in the dissolution action. This motion was denied on November 27, 2007. The plaintiff appealed from the denial of her motion to intervene to the Appellate Court, which dismissed her appeal.
Subsequently, on June 3, 2008, after a trial, the court in the dissolution action, Schumann, J., rendered a judgment of dissolution, which included a division of the marital property. In the dissolution decree, the defendant received all of the real property, and Otto received an automobile, some shares of stock and a relatively small remaining balance of his retirement funds. The plaintiff again appealed to the Appellate Court from the decision of the trial court denying her motion to intervene. The Appellate Court again dismissed her appeal for lack of a final judgment. On November 5, 2008, Otto was convicted of Smith's murder.
During the hearing in the wrongful death action, the trial court found probable cause to believe that the defendant did not truly want the dissolution from Otto that she was seeking. The defendant had testified that she wanted Otto released from jail so that he could come home and live with her. She admitted at the probable cause hearing that she still loved Otto and that she visited him in jail before and after he was convicted of murdering Smith. The court further found that the defendant did not truly intend to divorce Otto, but rather to conspire with him to obtain a judgment of dissolution in order to shield Otto's assets from Smith's estate. The court also found that Smith's estate is a creditor of the debtor, Otto, as defined under the act, and that Otto transferred assets shortly before commencement of the dissolution action with the specific intent to defraud his creditors, including the estate. The court further found that, knowing he would likely be arrested and prosecuted for Smith's murder, Otto made transfers in a hurried fashion. Additionally, the court found that there was not a "scintilla" of evidence suggesting that Otto's intent in transferring assets to his wife was nonfraudulent. The court also found that Otto had encouraged and facilitated the defendant's institution of a dissolution action against him and did not seriously contest those proceedings in order to ensure that most or all of his assets could not be reached by the plaintiff in the wrongful death action.
Thereafter, the plaintiff filed the present action against the defendant pursuant to the act,[4] along with an application for a *286 prejudgment remedy.[5] On May 8, 2009, the defendant filed a motion to dismiss the action on the ground that a dissolution judgment could not be collaterally attacked through a claim under the act. Thereafter, on August 28, 2009, the trial court, Domnarski, J., denied that motion. Subsequently, on September 3 and September 16, the trial court, Prescott, J., heard evidence on the plaintiff's application for a prejudgment remedy. On February 2, 2010, that court concluded that there was probable cause to show that the assets transferred from Otto to the defendant through the dissolution action were fraudulent transfers. In doing so, that court adopted the prior decision of Judge Domnarski, concluded that a dissolution judgment could be subject to a claim under the act, and awarded a prejudgment remedy in the amount of $670,000. Thereafter, the defendant appealed.
On February 11, 2010, the defendant filed a motion for reconsideration in which she claimed, inter alia, that the amount of the prejudgment remedy was higher than the amount alleged to have been transferred. On February 22, 2010, the plaintiff filed a motion for reconsideration seeking a higher prejudgment remedy award. On April 9, 2010, after previously denying most of the other claims, the trial court issued a memorandum of decision in which it agreed with the defendant that her one-half interest in the marital property could not be the subject of a fraudulent transfer and, accordingly, reduced the amount of the prejudgment remedy to $552,000. On April 16, 2010, the defendant filed an amended appeal. Additional facts will be set forth as necessary.

I
As a preliminary matter, we first address the plaintiff's claim that this court lacks jurisdiction to consider the defendant's claim that the trial court improperly denied her motion to dismiss. Specifically, the plaintiff asserts that this court cannot consider issues related to the denial of the defendant's motion to dismiss because it is not a final judgment, and this court only has jurisdiction under General Statutes § 52-278 l[6] to consider the decision of the trial court granting a prejudgment *287 remedy. The defendant responds that, because the granting of a prejudgment remedy is a final judgment under § 52-278l, the court on appeal may also review the denial of her motion to dismiss because this subsidiary decision is necessarily encompassed by review of the appeal. The defendant supports this argument with case law holding that, in an appeal from a final judgment, any adverse interlocutory ruling may be challenged.[7] We agree with the defendant.
As a preliminary matter, we set forth the standard of review. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding... subject matter jurisdiction is a question of law ... [and, therefore] our review is plenary." (Internal quotation marks omitted.) Sweeney v. Sweeney, 271 Conn. 193, 207, 856 A.2d 997 (2004).
"The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § [61-1].... The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level.... The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear.... In some instances, however, it is unclear whether an order is an appealable final judgment. In the gray area between judgments which are undoubtedly final and others that are clearly interlocutory ... this court has adopted the following test, applicable to both criminal and civil proceedings: An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them. State v. Curcio, 191 Conn. 27, 31, 463 A.2d 566 (1983)." (Citations omitted; internal quotation marks omitted.) Solomon v. Keiser, 212 Conn. 741, 745-46, 562 A.2d 524 (1989).
We agree with both parties that the motion to dismiss in this case was directed to the complaint as opposed to the prejudgment remedy. Section 52-278l (a)(1) provides in relevant part that "granting or denying a prejudgment remedy following a hearing ... shall be deemed a final judgment for purposes of appeal." In the present case, in granting the application for a prejudgment remedy, the court, Prescott, J., necessarily had to consider the issue raised in the motion to dismiss, namely, the plaintiff's standing to bring a claim under the act. In fact, in granting the prejudgment remedy, that court explicitly agreed with and adopted the prior decision of the court, Domnarski, J., denying the motion to dismiss. Accordingly, we conclude that we can review the defendant's claim related to the motion to dismiss because it is necessarily encompassed in the issues presented by the prejudgment *288 remedy.[8]See Marlin Broadcasting, LLC v. Law Office of Kent Avery, LLC, 101 Conn.App. 638, 641-45, 922 A.2d 1131 (2007) (addressing defendant's claim that plaintiff lacked standing to bring action in appeal brought pursuant to § 52-278l); see also Collins v. Anthem Health Plans, Inc., 266 Conn. 12, 28-30, 836 A.2d 1124 (2003) (considering interlocutory orders on claims that were "inextricably intertwined" with issues that were considered final judgments by virtue of statute).

II
We now turn to the defendant's claims that the trial court lacked jurisdiction over the plaintiff's claims because the plaintiff lacked standing. Specifically, the defendant claims that the trial court lacked subject matter jurisdiction over the plaintiff's claims because: (1) the plaintiff lacks standing to bring a claim under the act because the distribution of marital assets in a dissolution decree is not a transfer under the act; and (2) the trial court's determination that the plaintiff had standing under the act because the dissolution was undertaken with "actual intent to hinder, delay or defraud Smith's estate," was clearly erroneous. We disagree.
"[S]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) Fort Trumbull Conservancy, LLC v. Alves, 286 Conn. 264, 272 n. 9, 943 A.2d 420 (2008). "Two broad yet distinct categories of aggrievement exist, classical and statutory.... Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share.... Second, the party must also show that the [party's] decision has specially and injuriously affected that specific personal or legal interest.... Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest.... Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) Burton v. Commissioner of Environmental Protection, 291 Conn. 789, 803, 970 A.2d 640 (2009). "Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) Monroe v. Horwitch, 215 Conn. 469, 473, 576 A.2d 1280 (1990). "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) State v. Tabone, 301 Conn. 708, 713-14, 23 A.3d 689 (2011). *289 Whether General Statutes § 52-552e grants statutory aggrievement is a question of statutory interpretation over which our review is plenary. See C.R. Klewin Northeast, LLC v. State, 299 Conn. 167, 175, 9 A.3d 326 (2010).
"The process of statutory interpretation involves a reasoned search for the intention of the legislature.... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case...." (Internal quotation marks omitted.) Wasko v. Manella, 269 Conn. 527, 534-35, 849 A.2d 777 (2004). "When construing a statute, we first look to its text, as directed by General Statutes § 1-2z, which provides: The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Genesky v. East Lyme, 275 Conn. 246, 253-54, 881 A.2d 114 (2005). In the present case, we conclude, following an examination of the language of the act and its relationship to other statutes, that the plaintiff had standing to bring a claim under the act.
First, we examine whether the distribution of property in a dissolution decree is a transfer under the act. Section 52-552e provides in relevant part: "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor...." The term "`[t]ransfer'" is defined by General Statutes § 52-552b (12) to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." The use of the phrases "every mode" and "voluntary or involuntary" supports the conclusion that the term transfer is defined very broadly under the act. Therefore, the plain language of the act supports the conclusion that distribution of property in a dissolution decree is a transfer under the act.
Furthermore, the language of related statutes also supports the conclusion that distribution of property in a dissolution decree is a transfer under the act. Specifically, General Statutes § 46b-81, which governs the assignment of property and conveyance of title in dissolution actions, provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.
"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties...." *290 The use of the terms "assign," "pass title," "conveyance" and "vest title" in § 46b-81 supports the conclusion that the distribution of property in a dissolution decree would fit within the broad definition of transfer under the act.
We are further persuaded by the fact that many states that have considered this question have determined that a dissolution judgment may constitute a transfer of assets under the act. In re Hoyt, 97 B.R. 730 (Bankr.D.Conn.1989) (treating contested dissolution judgment as fraudulent transfer for purpose of resolving whether constructive fraud allegation was foreclosed by collateral estoppel in motion for summary judgment); Estes v. Titus, 481 Mich. 573, 580-81, 751 N.W.2d 493 (2008) (concluding that property settlement agreement incorporated into dissolution judgment is transfer for purposes of act); Dowell v. Dennis, 998 P.2d 206, 212-13 (Okla.Civ.App.2000) (concluding that property distribution in dissolution decree can be challenged in claim under act); Greeninger v. Cromwell, 140 Or.App. 241, 246, 915 P.2d 479 (same), cert. denied, 323 Or. 690, 920 P.2d 549 (1996); see also A. Barkey, "The Application of Constructive Fraud to Divorce Property Settlements: What's Fraud Got to Do with It," 52 Wayne L.Rev. 221 (2006).
In addition, our conclusion that a distribution of marital assets in a dissolution decree is a transfer for purposes of the act is bolstered by the fact that courts consider such a distribution to be a "transfer" for purposes of the federal Bankruptcy Code. The definition of "transfer" in the Bankruptcy Code is similar to that in the act. Specifically, 11 U.S.C. § 101(54)(D) (2006) defines transfer as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with(i) property; or (ii) an interest in property." In 1999, the Bankruptcy Court for the District of Columbia recognized that "it is now well settled that a transfer of property pursuant to a collusive divorce decree or property settlement intended to hinder, delay or defraud creditors (or pursuant to a divorce decree or property settlement for inadequate consideration, leaving the debtor insolvent) constitutes a `transfer' as defined under § 101(54) of the Bankruptcy Code." In re Hope, 231 B.R. 403, 415 (Bankr.D.D.C.1999); see also Britt v. Damson, 334 F.2d 896, 901-902 (9th Cir.1964) (deciding challenge to dissolution decree under bankruptcy act), cert. denied, 379 U.S. 966, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965); In re Clausen, 44 B.R. 41 (Bankr.D.Minn.1984) (same).
The conclusion that distribution of marital property in a dissolution decree should be subject to attack in a claim under the act is also supported by 49 C.J.S. 546, Judgments § 452 (2009), which allows for the collateral attack of a judgment by a creditor whose rights will be affected by the enforcement of that judgment on the ground that the judgment is fraudulent as to the creditor. In order to collaterally attack the judgment, § 452 requires the creditor to prove both that there was fraud designed to injure the creditor, and that the creditor's rights must have accrued before the judgment was entered. In the present case, the plaintiff had a "claim" against Otto prior to the transfer of assets from Otto to the defendant. Pursuant to the act, a "`[c]laim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." General Statutes § 52-552b (3). The "legislature chose to adopt a very broad definition of the term `claim' ... [and therefore] a plaintiff's claim [arises] on the date of the injury in the underlying action." Davenport v. Quinn, 53 Conn.App. 282, 304, 730 A.2d *291 1184 (1999). Thus, we agree with the trial court that "the plaintiff's ... claim [under the act] arose on the date Smith was murdered, which was prior to both Otto transferring his land in Massachusetts and to the defendant filing for divorce against Otto." See 50 C.J.S. 65, Judgments § 511, (2006) ("[a creditor], whose rights or claims would be injuriously affected by enforcement of a judgment against [his] debtor, [may] impeach its validity on the ground that it is fraudulent"). Accordingly, 49 C.J.S., supra, p. 546, also supports our conclusion that the plaintiff has standing to bring her claim under the act.
The defendant claims that distributions of marital property as part of a dissolution judgment are not "transfers" subject to the act, but rather are equitable determinations as to which portion of the marital estate each party is entitled. "[T]he purpose of property division is to unscramble the ownership of property giving to each spouse what is equitably his." (Internal quotation marks omitted.) Werblood v. Birnbach, 41 Conn.App. 728, 735, 678 A.2d 1 (1996). On the basis of this reasoning, the defendant claims that the plaintiff should not be allowed to bring her claim under the act because it would disturb the distribution that was carefully crafted by the trial court in the dissolution action and would create further complications for distributing marital property. The California Supreme Court rejected this concern in Mejia v. Reed, 31 Cal.4th 657, 669, 74 P.3d 166, 3 Cal.Rptr.3d 390 (2003) recognizing that "the parties' debts, and how to pay them, are matters that should be considered in marital settlement negotiations even if, like pension plans and income tax consequences, they make the process of reaching an agreement more complex." Furthermore, in concluding that the distribution of marital assets is a transfer under the act, the California Supreme Court also relied on the fact that, "[i]n view of this overall policy of protecting creditors, it is unlikely that the [l]egislature intended to grant married couples a one-time-only opportunity to defraud creditors by including the fraudulent transfer in [a marital separation agreement]." Id., at 668, 74 P.3d 166, 3 Cal.Rptr.3d 390. We agree with the reasoning of the California Supreme Court and conclude that policy considerations support our conclusion that the distribution of assets in a dissolution decree is a transfer under the act.
The defendant further asserts that the distribution of marital property can only be considered a transfer for purposes of the act when it arose from a settlement agreement as opposed to a contested hearing. The rationale for the defendant's position is, undoubtedly, that there is more opportunity for fraud or collusion in the event of a settlement agreement as compared to a case that is fully tried on the merits. Even in the case of a settlement agreement, however, a court must approve the agreement and incorporate the agreement into the judgment. Further, the defendant's position does not consider the fact that the likelihood for abuse exists both in the parties' agreement regarding a disposal of assets, and in a trial when one party intentionally does not fully contest the claims of the other. We note that in the dissolution action in the present case, the defendant's attorney submitted a set of "proposed orders" to the trial court. Namely, the defendant proposed the transfer of all of Otto's assets to her, and suggested that she retain all assets in her name. The trial court granted all of the defendant's requests, except a proposal for $12,500 of the retirement funds to be paid to Otto's attorney. Therefore, we see no reason to preclude the plaintiff from bringing a claim under the act in the present case merely because the division of marital assets happened after a trial, rather than *292 as a result of an agreement between the parties.
We next address the defendant's claim that the plaintiff did not have standing because the trial court's finding that the dissolution action was undertaken with "actual intent to hinder, delay or defraud" the plaintiff was clearly erroneous. Specifically, the defendant argues that there was no evidence in the record to support the trial court's finding that the dissolution action was undertaken with the intent to defraud the plaintiff. The defendant contends that both in denying the motion to dismiss and in granting the prejudgment remedy, the trial courts, Domnarski and Prescott, Js., improperly relied on testimony given by the defendant at the dissolution trial that she was aware that she may still need to litigate an action brought by the plaintiff under the act before she could own the assets distributed to her through the dissolution action. The defendant argues that this reliance was misplaced and undermines the trial court's finding that the dissolution action was commenced with actual intent to hinder, delay or defraud. The plaintiff claims that there was ample evidence in light of the numerous factors set forth in § 52-552e (b),[9] which the court may consider in determining "actual intent" to fraudulently transfer.[10] We agree with the plaintiff.
*293 As we previously have indicated, the standard of review "of the granting of a prejudgment remedy is very circumscribed.... In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error." (Citation omitted; internal quotation marks omitted.) TES Franchising, LLC v. Feldman, 286 Conn. 132, 137, 943 A.2d 406 (2008). We are further cautioned by the fact that the trial court in a hearing on an application for a prejudgment remedy need only make a finding of probable cause, as opposed to a more heightened standard that may prevail during the trial of the cause of action. It is with this probable cause standard in mind that we evaluate the court's finding of probable cause in the present case.
"The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.... Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false.... The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim.... The court's role in such a hearing is to determine probable success by weighing probabilities.... In this process the trial court is vested with broad discretion which is not to be overruled in the absence of clear error." (Citations omitted; internal quotation marks omitted.) Three S. Development Co. v. Santore, 193 Conn. 174, 175-76, 474 A.2d 795 (1984). The intent to defraud almost always is proven by circumstantial evidence. A person's intent is to be inferred from his conduct under the surrounding circumstances, and is an issue for the trier of fact to decide. State v. Nosik, 245 Conn. 196, 208, 715 A.2d 673, cert. denied, 525 U.S. 1020, 119 S.Ct. 547, 142 L.Ed.2d 455 (1998).
In its memorandum of decision on the application for prejudgment relief, the court, Prescott, J., focused on Otto's intent in entering into the dissolution. In making its decision, the court reasoned that, "[a]lthough the transfer of the Ellington and Stafford real property, as well as cash and other personal property, have been ordered by Judge Schuman, [this] court concludes that the appropriate inquiry regarding intent must center upon Otto's actions with respect to the overall divorce proceeding. In other words, although [the defendant], at least in theory, had ample and even compelling justifications to seek a divorce from Otto, it is Otto's intent with respect to the divorce that is ultimately dispositive." That court further found that, "[b]ased upon the factual findings set forth [in this memorandum of decision], there is probable cause to believe that [Otto] encouraged and facilitated [the defendant] to institute a divorce action against him, and then did not seriously contest the case in order to ensure that most or all of his assets could not be *294 reached by the estate of [Smith] in the wrongful death action." We conclude that the trial court's finding of probable cause was not an abuse of its discretion.
Section 52-552e (b) provides: "In determining actual intent under subdivision (1) of subsection (a) of this section, consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with a suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."
Relying on the factors in § 52-552e (b), we conclude that there is sufficient evidence in the record to support a probable cause finding that Otto commenced the dissolution action with actual intent to fraudulently transfer his assets to the defendant. First, the transfer of his property to the defendanthis former wife with whom he continued to resideconstituted transfers to an insider. Second, Otto continued to retain control of the assets after the transfer. Specifically, Otto continued to enjoy the use of the Ellington Road property and other assets until his incarceration. Third, the transfers left Otto totally without assets. The $12,500 awarded to him was for the purpose of paying his attorney. Otto did not receive any consideration for any of the transfers, and became insolvent shortly after the transfers. Fourth, the dissolution proceedings were instituted shortly after the police began investigating Otto in connection with Smith's murder and shortly after they searched his property as part of that investigation. The transfers occurred shortly after Smith's body was found on his property. As the foregoing demonstrates, the evidence in the record supported a finding of probable cause that many of the factors set forth in § 52-552e (b) had been met. Accordingly, we conclude that the trial court properly determined that probable cause existed that Otto commenced the dissolution action with actual intent to hinder, delay or defraud the plaintiff.

III
Finally, we address the defendant's claim that the trial court lacked jurisdiction over this case because it cannot afford the plaintiff practical relief. Specifically, the defendant asserts that the plaintiff's claim under the act is an improper collateral attack on the trial court's judgment in the dissolution action. The defendant also claims that the property distributions of the trial court in that action cannot be disturbed because of this court's understanding of financial orders in a dissolution case "as resembling a mosaic, in which all the various financial components are carefully interwoven with one another...." (Internal quotation marks omitted.) The defendant also asserts that the plaintiff is improperly attempting to obtain modification of a property distribution, which is forbidden by General Statutes §§ 46b-81 *295 and 46b-86.[11] In response, the plaintiff asserts that her claim under the act is a challenge to the transfer of assets, not a collateral attack on the dissolution decree. The plaintiff also asserts that the mosaic rule does not apply to a third party creditor. Finally, the plaintiff claims that the prohibition against modification of marital property distribution set forth in §§ 46b-81 and 46b-86 does not apply to her claim under the act. We agree with the plaintiff.
"Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute ... (2) that the interests of the parties be adverse... (3) that the matter in controversy be capable of being adjudicated by judicial power ... and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) State v. McElveen, 261 Conn. 198, 217, 802 A.2d 74 (2002).
First, as we explained in part I of this opinion, we have long recognized an exception to the rule against collateral attacks for the benefit of strangers to a judgment who did not have an opportunity to litigate their claim in the previous action. 50 C.J.S., supra, p. 65 ("[a creditor], whose rights or claims would be injuriously affected by the enforcement of a judgment against [his] debtor, may impeach its validity on the ground that it is fraudulent"). In the present case, the plaintiff attempted to intervene in the dissolution proceeding, but was denied intervention, from which she appealed to the Appellate Court. The Appellate Court dismissed the appeals for the lack of a final judgment.[12] Therefore, the plaintiff was not a party to the dissolution action and, accordingly, was unable to litigate her claim under the act in the context of the dissolution proceeding. Thus, the plaintiff was a stranger to the previous litigation. Further, we note that the plaintiff is not seeking to set aside the dissolution decree. Rather, the plaintiff is seeking to attach certain assets that were transferred to the defendant as the result of that decree. We agree with the trial court that providing the plaintiff relief under the act "would not require the court here to set aside the judgment dissolving the Ottos' marriage, but instead would only bring to fruition a result that [the defendant] was made aware of during the divorce proceeding, i.e., that she may not ultimately retain some of these assets that were to be distributed to her as part of the divorce." Therefore, in view of the fact that the plaintiff did not have the opportunity to litigate this issue in the context of the dissolution action, and is not attempting to set aside the dissolution judgment, we conclude that the trial court properly determined that this action does not constitute an impermissible collateral attack on the judgment of the trial court.
*296 Second, the defendant asserts that the manner in which this court views financial orders in dissolution cases bars the plaintiff's claim under the act. This court has previously stated that "[t]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of marriage." (Internal quotation marks omitted.) Loughlin v. Loughlin, 280 Conn. 632, 641, 910 A.2d 963 (2006). "[I]ssues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) Misthopoulos v. Misthopoulos, 297 Conn. 358, 378, 999 A.2d 721 (2010). Recently, this court has stated, however, that "[a] financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors.... In other words, an order is severable if its impropriety does not place the correctness of the other orders in question." (Citation omitted; internal quotation marks omitted.) Maturo v. Maturo, 296 Conn. 80, 124-25, 995 A.2d 1 (2010). Accordingly, we conclude that the general principle that financial orders in dissolution cases are interwoven does not bar the plaintiff from bringing her claim under the act.
Furthermore, because the plaintiff was not a party to the dissolution action, she cannot be bound by that judgment and the provisions of §§ 46b-81 and 46b-86 do not apply to her. Those statutory provisions clearly only apply to parties to a dissolution proceeding. Additionally, the matter is clearly justiciable. The practical relief sought is the retransfer of alleged fraudulently transferred assets, or the monetary equivalent of those assets at the time of the fraudulent transfer. We can see no reason to bar the plaintiff from availing herself of the remedies available under the act, particularly where, as here, there is probable cause to believe that Otto invoked the trial court's jurisdiction in an effort to hinder, delay or defraud the plaintiff. Accordingly, we conclude that the trial court properly granted the plaintiff's application for a prejudgment remedy.
The judgment is affirmed.
In this opinion the other justices concurred.
NOTES
[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199(c) and Practice Book § 65-1.
[2] The plaintiff also asserts that the portion of the defendant's appeal challenging the trial court's denial of her motion to dismiss should be dismissed for lack of a final judgment. As we explain in part I of this opinion, we disagree.
[3] We note that the appeal involves the decisions of two trial courts. The trial court, Domnarski, J., ruled on the motion to dismiss. The trial court, Prescott, J., ruled on the prejudgment remedy. As discussed later in this opinion, however, in view of the fact that the trial court, Prescott, J., expressly considered and approved of the earlier decision of the court, Domnarski, J., we refer herein to the trial court ruling in the singular, referring to the decision of the trial court, Prescott, J., for the sake of clarity.
[4] General Statutes § 52-552e provides in relevant part: "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor...."
[5] The plaintiff in the wrongful death action was identified as the "estate of Shamaia L. Smith," while the plaintiff in the present action is "Regina Canty, administratrix of the estate of Shamaia L. Smith." For clarity, references to the plaintiff in this opinion refer to both the estate of Smith and Canty in her capacity as administratrix of that estate.
[6] General Statutes § 52-278l provides: "(a) An order (1) granting or denying a prejudgment remedy following a hearing under section 52-278d or (2) granting or denying a motion to dissolve or modify a prejudgment remedy under section 52-278e or (3) granting or denying a motion to preserve an existing prejudgment remedy under section 52-278g shall be deemed a final judgment for purposes of appeal.

"(b) No such appeal shall be taken except within seven days of the rendering of the order from which the appeal is to be taken.
"(c) No such order shall be stayed by the taking of an appeal except upon the order of the judge who made such order, and any such stay shall be granted only if the party taking the appeal posts a bond, with surety, in a sum determined by such judge to be sufficient to indemnify the adverse party for any damages which may accrue as a result of such stay.
"(d) If a motion to discharge such prejudgment remedy is brought by the defendant, the property affected by such remedy may be restored to the use of the defendant, if the defendant posts a bond with surety in an amount determined by such judge to be sufficient to indemnify the plaintiff for any damages which may accrue by the defendant's continued use of such property, until such time as such motion is decided."
[7] The defendant relies on State v. Assuntino, 180 Conn. 345, 349, 429 A.2d 900 (1980), which stands for the proposition that, in an appeal taken from a final judgment that disposes of the entire action, the appellant may challenge any adverse interlocutory ruling that led to judgment being rendered against him. See also Blue Cross/Blue Shield of Connecticut, Inc. v. Gurski, 49 Conn.App. 731, 733-34, 715 A.2d 819, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998). We reject this argument because Assuntino does not have any applicability to a situation, such as the situation in the present case, wherein an appeal is taken from an interlocutory orderhere, an order granting a prejudgment remedythat is final because a statute mandates the finality of the order.
[8] The court, Prescott, J., distinguished between assets that were transferred before the institution of the divorce action, and those that were transferred as the result of the dissolution judgment. It appears that Judge Prescott believed that the standing claims raised by the defendant related to only the transfer of assets that took place as the result of the dissolution judgment. In light of that fact, it is questionable whether the defendant would be entitled to a dismissal of the entire case even if she prevailed on her standing claims.
[9] General Statutes § 52-552e (b) provides: "In determining actual intent under subdivision (1) of subsection (a) of this section, consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with a suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."
[10] To the extent that the defendant asserts that the court, Domnarski, J., improperly denied her motion to dismiss the plaintiff's claims because it improperly concluded that the complaint alleged sufficient facts to state a claim under the act for fraud, we disagree. In ruling on the motion to dismiss, the issue before the court was whether, taking all of the facts alleged in the complaint as true, they would support a conclusion "either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations or (2) that the conveyance was made with a fraudulent intent in which the grantee participated." (Internal quotation marks omitted.) Certain Underwriters at Lloyd's, London v. Cooperman, 289 Conn. 383, 394, 957 A.2d 836 (2008). In the present case, the plaintiff alleged both that Otto's initial conveyance of the Massachusetts property by quitclaim deed to the defendant and the Ottos' entire divorce proceeding was undertaken with the intent to shelter various assets from the plaintiff. The plaintiff further asserted that the timing of these transfers, occurring so quickly after Otto became a suspect in Smith's murderand well before Otto was convicted of a crimeoffers a reasonable inference of fraudulent intent. In ruling on the motion to dismiss, the court found that "the plaintiff has alleged both that Otto's initial conveyance of the Massachusetts property by quitclaim deed to the defendant and that the Ottos' entire divorce proceeding was undertaken with the intent to shelter various assets form the plaintiff. Moreover, the plaintiff asserts that the timing of these transfers, occurring so quickly after Otto became a suspect in Smith's murder and well before Otto was convicted of that crime, offers a reasonable inference of fraudulent intent. Taken together, these facts support a claim of actual fraud because they support a conclusion that Otto and the defendant acted with `actual intent to hinder, delay or defraud' the plaintiff, to whom Otto is a debtor." As we previously have indicated, the trial court was entitled to accept all allegations in the complaint as true. We agree that the facts alleged in the complaint support a claim of actual fraud because they support a conclusion that Otto and the defendant acted with "actual intent to hinder, delay or defraud" the plaintiff, to whom Otto is the debtor. General Statutes § 52-552e (a)(1). Accordingly, we conclude that the trial court properly determined that the plaintiff had alleged sufficient facts to support a claim of fraudulent transfer and, therefore, properly denied the defendant's motion to dismiss.
[11] Although the defendant cites General Statutes § 46b-1 in her brief, we understand her claim to be a claim that the plaintiff's action is barred under §§ 46b-81 and 46b-86. We have held that, "[b]y its terms [§ 46b-81] deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under... § 46b-81." Bunche v. Bunche, 180 Conn. 285, 289, 429 A.2d 874 (1980). We also note that § 46b-86 does preclude a trial court in a dissolution proceeding from modifying assignments of assets transferred under § 46b-81.
[12] The defendant suggests that the plaintiff should have filed a writ of error, however, this court previously has held that the proper method for an aggrieved nonparty to challenge the denial of a motion to intervene is by filing an appeal, not a writ of error. Hennessey v. Bristol Hospital, 225 Conn. 700, 626 A.2d 702 (1993); In re Baby Girl B., 224 Conn. 263, 618 A.2d 1 (1992).