******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

PRESCOTT, J., concurring. Although I find it a much closer question, I agree with the majority that the respondent has appealed from a final judgment[1] and that we, therefore, have jurisdiction over this appeal. I also fully agree with and join in the majority opinion's analysis and resolution of the merits of the respondent's claim on appeal.

I write separately in order to explain why I think the final judgment question presented here is a close one and to express my concerns regarding developments in our final judgment jurisprudence, particularly in light of our Supreme Court's recent decision in *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 183 A.3d 1164 (2018) (*Meribear*). Indeed, the decision in *Meribear* and its potential application to this case is the most recent iteration of our long struggle "for a predictable and efficacious final judgment standard." E. Prescott, Connecticut Appellate Practice & Procedure (5th Ed. 2016) § 3-1:1.1, p. 85.

In the present case, the petitioner, the Commissioner of Children and Families, initiated this proceeding seeking the termination of the parental rights of the respondent, Luis V., and filed Judicial Branch Form JD-JM-40 (Rev. 6-16) (form JD-JM-40). On that form, the petitioner alleged two statutory grounds for termination of the respondent's parental rights. First, she checked box B 1, which alleges that the "child . . . has been found in a prior proceeding to have been neglected, abused or uncared for and the father [has] failed to achieve the degree of personal rehabilitation that would encourage the belief that within a reasonable period of time, considering the age and needs of the child . . . [he] could assume a responsible position in the life of the child . . . ." Second, the petitioner checked box C, which alleges that the "child . . . has been denied, by reason of an act or acts by the . . . father of commission or omission; including but not limited to, sexual molestation or exploitation, severe physical abuse or a pattern of abuse, the care, guidance or control necessary for [her] physical, educational, moral or emotional well-being." Attached to this pleading is a summary of facts, as required by Practice Book § 33a-1, that alleges, in separately numbered paragraphs, the facts that specifically relate to each of the adjudicatory grounds alleged on the form.

The petitioner was subsequently granted permission to amend the petition to add an additional adjudicatory ground on which the petition could be granted. Specifically, the petitioner alleged, as an alternative, "ground D"[2]: "[T]here is no ongoing parent-child relationship with respect to the father . . . that ordinarily develops as a result of a parent having met on a continuous, day-

to-day basis, the physical, emotional, moral or educational need of the child and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interest of the child . . . ."

At the beginning of the trial, the petitioner withdrew ground C, that is, the claim that the respondent's parental rights should be terminated because of a parental act of omission or commission. As a result, the petitioner at trial expended resources litigating and presented evidence on ground B 1 (failure to rehabilitate) and ground D (no ongoing parent-child relationship).

On November 9, 2017, in a brief oral decision from the bench, the court granted the petition and terminated the respondent's parental rights. In doing so, the court addressed only the petitioner's entitlement to relief on ground B 1, stating, "I'm just going to go with ground B because I think it is the simplest and clearest here." The court did not state that the petitioner failed to establish her entitlement to relief on ground D.

On November 17, 2017, and December 21, 2017, the respondent filed motions for extension of time to file an appeal so that he could obtain and review the trial transcripts and seek the appointment of appellate counsel. These motions for extension of time were granted and the respondent subsequently was appointed appellate counsel by the court. On February 9, 2018, the respondent's counsel filed this appeal.

On March 8, 2018, the petitioner filed a motion to articulate, pursuant to Practice Book § 66-5, requesting, among other things, that the trial court make specific findings as to ground D. The petitioner essentially argued that she had presented witnesses and exhibits with respect to ground D and that she was entitled to a decision by the court on that adjudicatory ground.

On March 19, 2018, the court, *Hon. Henry S. Cohn*, judge trial referee, issued an articulation stating that when it rendered its judgment on November 9, 2017, it "made no adjudicative findings on 'ground D' " and that because "the court has addressed ground B [1], the court declined to discuss ground D with its attendant legal and proof requirements. It continues to adhere to that position and declines to further articulate on ground D."

With this procedural history in mind, a brief discussion of *Meribear* is warranted. In that case, our Supreme Court recognized that, as general rule, "a judgment that disposes of only part of a complaint is not final, unless it disposes of all causes of action against the appellant." *Meribear*, supra, 328 Conn. 717. The court then sought to clarify "the circumstances under which there [is] an appealable final judgment [if] the trial court's decision does not dispose of counts advancing alternative theories of relief." Id., 711.

In resolving this question, the court distinguished between two possible scenarios in which a trial court has not adjudicated all of the theories of recovery advanced by a plaintiff. The first category of cases "involves counts alleging claims that are legally inconsistent . . . such that establishing the elements of one precludes liability on the other . . . ." Id., 721. "The second category involves claims that present alternative theories of recovery for the same injury, but are not legally inconsistent." Id., 722.

The court in *Meribear* then concluded that judgments in the first category of cases should be treated as final for purposes of appeal, but decisions in the second category should not be so treated. The court reasoned as follows: "Because of the different effect of the rulings in these categories, drawing a distinction between them for purposes of the final judgment rule advances the policies underlying that rule, namely, the prevention of piecemeal appeals and the conservation of judicial resources. *Niro* v. *Niro*, 314 Conn. 62, 78, 100 A.3d 801 (2014); see also *Canty* v. *Otto*, 304 Conn. 546, 554, 41 A.3d 280 (2012) (citing policy to facilitate the speedy and orderly disposition of cases at the trial court level). At trial, the parties have expended resources to fully litigate all of the claims advanced. A rule that would allow the trial court not to dispose of counts that present alternative, legally consistent theories of recovery could lead to multiple unnecessary appeals and retrials. In exceptional circumstances in which the trial court and the parties agree that litigating only some of the alternative claims for relief and proceeding to appeal on those issues before litigating alternative claims would constitute the greater efficiency, our rules provide a mechanism to address those circumstances. See Practice Book § 61-4 (a) . . . .

"In sum, we conclude that when the trial court disposes of one count in the plaintiff's favor, such a determination implicitly disposes of legally inconsistent, but not legally consistent, alternative theories. When a legally consistent theory of recovery has been litigated and has not been ruled on, there is no final judgment." (Internal quotation marks omitted.) *Meribear*, supra, 328 Conn. 723–24.

I turn then to the question of whether the decision in *Meribear* compels a conclusion in this termination of parental rights case that no final judgment yet exists. Certainly, the sound policy that *Meribear* seeks to advance, that is, the prevention of "multiple unnecessary appeals and retrials"; id., 723; would be promoted by a conclusion that, in order to render a final judgment, the trial court here was obligated to decide both of the adjudicatory grounds upon which the petitioner proceeded to trial. If this court had concluded on appeal that the trial court improperly concluded that the petitioner established adjudicatory ground B, then this case

arguably would need to be remanded for a new trial on adjudicatory ground D, thereby fostering the possibility of multiple appeals, and the attendant delay in securing permanency for Joheli.

Second, there is no question that, in the broad phraseology of *Meribear*, the two adjudicatory grounds are legally consistent, but alternative theories of relief (or recovery). A conclusion that no ongoing parent-child relationship exists between the respondent and Joheli would not be legally inconsistent with a concomitant conclusion that the respondent had "failed to achieve such degree of personal rehabilitation as would encourage the belief that, considering the age and needs of the child, he could assume a responsible position in her life." Proving either or both adjudicatory grounds would entitle the petitioner to a judgment terminating the respondent's parental rights, provided that the petitioner also established that termination was in Joheli's best interest.

Thus, the primary distinction between this case and *Meribear* is that the legally consistent but alternative theories of recovery in *Meribear* were alleged in separate counts of the plaintiff's complaint, whereas in this case, the alleged adjudicatory grounds are not contained in separate counts, but instead are alleged on a judicially authorized form that is expressly designed for this unique statutory action and is not divided into counts in the traditional sense.

I agree with the majority that this distinction is significant in light of the repeated references in *Meribear* to the fact that the legally consistent but alternative theories of recovery were contained in separate counts of the plaintiffs' complaint. Thus, in my view, the Supreme Court's broad statement that "[w]hen a legally consistent theory of recovery has been litigated and has not been ruled on, there is no final judgment"; *Meribear*, supra, 328 Conn. 724; should be limited to the specific procedural context in which the final judgment question arose in *Meribear*. Accordingly, *Meribear* does not require a conclusion that there is a lack of a final judgment in this case because the alternative theories of liability alleged by the petitioner were not pleaded in separate counts.[3]

My conclusion that *Meribear* does not *control* the final judgment issue does not mean, however, that its rule should not be extended to the present case. Certainly, the policy reasons underlying *Meribear* are salutary, and arguably warrant application in a termination of parental rights case where concerns for piecemeal appeals and the attendant delays are seemingly paramount. On the other hand, the trial court's choice to refrain from deciding the question of whether the petitioner had established by clear and convincing evidence that there was no ongoing parent-child relationship between the respondent and Joheli is, perhaps, not with-

out some justification. In the trial court's view, the closeness of the factual and legal questions related to this adjudicatory ground, and the overall strength of the petitioner's case with respect to the adjudicatory ground it did decide, may well have created in Judge Cohn's mind a disinclination to tread where it seemed unnecessary to go. Reaching adjudicatory ground D may also have delayed the trial court's resolution of adjudicatory ground B 1. Ultimately, in light of *Meribear*'s lack of vintage, and the uniqueness of the petitioner's statutory action, I am reluctant to extend *Meribear* to this case without further guidance from our Supreme Court.

I turn then to an explanation regarding why I believe a final judgment exists in this case, despite a colorable argument to be made that the petitioner's claim with respect to adjudicatory ground D remains pending in the trial court.[4] In my view, the trial court's repeated refusal to decide adjudicatory ground D constitutes the functional denial of that claim.

In a related context, our Supreme Court in *Ahneman* v. *Ahneman*, 243 Conn. 471, 480, 706 A.2d 960 (1998), recognized that in certain circumstances a "trial court's decision not to consider the defendant's [postdissolution] motions was the functional equivalent of a denial of those motions. Like a formal denial, the effect of the court's decision refusing to consider the defendant's motions . . . was to foreclose the possibility of relief from the court on those issues . . . ."

In the present case, the trial court's refusal to decide adjudicatory ground D foreclosed the petitioner from obtaining a judgment terminating the respondent's parental rights on the ground that there is no ongoing parent-child relationship between the respondent and Joheli. Accordingly, in combination with the court's conclusion that the petitioner was entitled to a judgment terminating the respondent's parental rights on the adjudicatory ground of failure to rehabilitate, the effective denial of adjudicatory ground D means that there were no further claims left to be adjudicated by the trial court at the time this appeal was filed. Accordingly, there is a final judgment from which the respondent was entitled to appeal.[5]

In sum, I concur with the majority that the respondent has appealed from a final judgment in this case, and, with respect to the merits of the appeal, I agree that the judgment of the court should be affirmed for the reasons stated by the majority.

[1] "Because our jurisdiction over appeals, both criminal and civil, is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . . Additionally, with the exception of certain statutory rights of appeal not relevant here, our jurisdiction is restricted to appeals from final judgments." (Citation omitted; internal quotation marks omitted.) *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 245, 811 A.2d 1272 (2002).

[2] The petitioner appears to have used this nomenclature because it corres-

ponds to box D on form JD-JM-40. See also General Statutes § 17a-112 (j) (3) (D).

[3] If the petitioner had chosen to initiate this action by filing a traditional complaint and divided the adjudicatory grounds into different counts rather than using form JD-JM-40, the resolution of the final judgment issue in this case might be different under the holding in *Meribear* because there would be an undecided count that alleges an alternative but not inconsistent theory of recovery. I point this out only to suggest that the policies that motivated our Supreme Court in *Meribear* would militate in favor of a conclusion that there is not a final judgment regardless of whether the different adjudicatory grounds had been brought in a single count or in different counts. Nevertheless, pursuant to our reading of *Meribear*, there is a final judgment if the adjudicatory grounds are brought in a single count but no final judgment if the adjudicatory grounds are separated into different counts. Such fine distinctions in our final judgment jurisprudence simply create a trap for the unwary.

[4] Certainly, there is no dispute that the petitioner took steps, without success, to secure a decision by the trial court on that adjudicatory ground.

[5] If my analysis is correct and a final judgment exists in this case, then the petitioner was under some obligation to take procedural steps necessary to obtain an adjudication by the trial court of ground D in the event that the respondent was successful in obtaining a reversal of the judgment terminating his parental rights, which was predicated on adjudicatory ground B. Arguably, the petitioner could have attempted to file a cross appeal from the court's judgment rendered on November 9, 2017. Such an appeal, however, would itself be on shaky jurisdictional footing because the petitioner arguably would not be aggrieved by the court's decision refusing to adjudicate ground D because the court ultimately granted the only relief the petitioner sought by terminating the respondent's parental rights.

Under these circumstances, the respondent could have sought to protect her rights pursuant to Practice Book § 63-4 (a) (1), which provides in relevant part that an appellee shall file a preliminary statement of issues if the appellee "wishes to: (A) present for review alternative grounds upon which the judgment may be affirmed; (B) present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial; or (C) claim that a new trial rather than a directed judgment should be ordered if the appellant is successful on appeal  . . . ."

Presumably, subparagraph (A) of § 63-4 (a) (1) would not apply in these circumstances because the trial court made no factual findings with respect to the existence of an ongoing parent-child relationship. In the absence of such findings, and, because this court is not in the business of finding facts, we would not have a basis for concluding whether the judgment should be affirmed because the petition should have been granted on this adjudicatory ground. Pursuant to subparagraph (B), however, the petitioner could assert that the effective denial of adjudicatory ground D constituted an adverse ruling or decision of the court that should be reversed in the event that the respondent was awarded an new trial, or, pursuant to subparagraph (C), the petitioner could assert that she was entitled to a new trial on adjudicatory ground D if this court on appeal had concluded that the respondent was entitled to a directed judgment on adjudicatory ground B.

My attempt to delineate what I believe the petitioner should have done to preserve her right to obtain a decision on adjudicatory ground D if additional proceedings were necessitated by a successful appeal by the respondent should not be construed as a criticism of the counsel for the petitioner who, in my view, diligently attempted to navigate the murky waters of our final judgment jurisprudence. In the end, *Meribear* adds an additional layer of complexity and questions regarding the finality of judgments in circumstances where not all theories of recovery or liability are adjudicated on their merits by a trial court.